# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| Scott Yuhanick<br>35 North Vine Street<br>Columbiana, Ohio 44408<br><br>　　　　Plaintiff<br><br>v.<br><br>Hwareh.com, Inc. dba Healthwarehouse.com<br>7107 Industrial Road<br>Florence, Kentucky 41042<br><br>and<br><br>Joseph B. Peters<br>9085 Braxton Drive<br>Union, Kentucky 41091<br><br>　　　　Defendants | CASE NO. _____<br><br>Judge _____<br><br><br><br><br><br>**COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Scott Yuhanick ("Plaintiff" or "Mr. Yuhanick") for his Complaint against Defendant Hwareh.com, Inc. dba Healthwarehouse.com ("HealthWarehouse") and Joseph B. Peters (collectively "Defendants") alleges as follows:

## **PARTIES**

1.　　Plaintiff Scott Yuhanick is a citizen of Ohio who resides at 35 North Vine Street Columbiana, Ohio 44408.

2.　　Defendant HealthWarehouse[1] is a Delaware corporation with its principal place of business located at 7107 Industrial Road Florence, Kentucky 41042. HealthWarehouse conducts its business activities throughout the United States, including within the state of Ohio.

---

[1] According to the Kentucky Secretary of State website, on July 29, 2011, "Hwareh.com, Inc.," a Delaware corporation, organized on March 6, 2007, with its principal office at 7107 Industrial Road Florence, Kentucky 41042, obtained its Certificate of Authority as a Foreign Business Entity. On April 19, 2012, Hwareh.com, Inc. assumed the name Healthwarehouse.com, Inc. On September 28, 2013, the Certificate of Authority was revoked for

- 2 -

3. Defendant Joseph B. Peters is a citizen of Kentucky who resides at 9085 Braxton Drive Union, Kentucky 41091.

**JURISDICTION**

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 as this action seeks relief pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*

5. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

6. This Court has personal jurisdiction over Defendants because, in connection with the transactions and occurrences out of which the causes of action pleaded in this Complaint are based, Defendants have conducted business in the State of Ohio.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and S.D. Ohio R. 82.1.

**FACTUAL BACKGROUND**

8. HealthWarehouse is an online pharmacy supported by a physical pharmacy to facilitate its internet-based platform[2] that, among other things, is licensed and/or authorized to market and sell medical prescriptions, over-the-counter medicine, medical equipment, devices, and other healthcare products and services ("Products and Services") for personal and commercial use for both humans and animals.

9. HealthWarehouse markets and sells its Products and Services directly to individual and group customers, and indirectly to individual and group customers, who are

---

failure to file its annual report within 60 days after it was due. On October 17, 2013, Hwareh.com, Inc. received its Certificate of Authority as a Foreign Business Entity. Hwareh.com, Inc. listed its principal and registered office at 7107 Industrial Road Florence, Kentucky 41042. On September 2, 2014, Hwareh.com, Inc. assumed the name "Healthwarehouse.com."

[2] *See* www.healthwarehouse.com.  Note that HealthWarehouse also accepts customer inquiries and orders via telephone, ordinary mail, and fax, however, the bulk of its sales originate online.

referred, or directed, to HealthWarehouse's website through third-party marketing entities ("Customers").

10. HealthWarehouse is a relatively new business that was formally established as a Delaware corporation on or about March 6, 2007.

11. Defendants are "employers" within the meaning of, and subject to, the provisions of the Fair Labor Standards Act. 29 U.S.C. §§ 203, 206, 207, 216.

12. At all relevant times, HealthWarehouse has engaged in interstate commerce and had annual gross revenues in excess of $500,000.00.

13. Prior to relocating to its current office space in Florence, Kentucky, from at least 2009 through mid-2011, HealthWarehouse's principal place of business was located at 100 Commerce Boulevard, Loveland, Ohio where both the HealthWarehouse pharmacy and its business offices were located.

14. In order to generate sales, HealthWarehouse has employed sales representatives who were incentivized through compensation plans which included, a base salary plus the opportunity to earn commissions through the origination and/or maintenance of Customer relationships that resulted in revenue to HeathWarehouse.

15. Many Customer relationships were originated and/or maintained by sales representatives who worked at HealthWarehouse's principal office in Loveland, Ohio.

16. On or about January 1, 2010, Mr. Yuhanick was hired by HealthWarehouse as the Vice President of Sales to work at its principal office in Loveland, Ohio. During this time, Mr. Yuhanick's responsibilities included acting as a sales representative and, at various times, hiring HealthWarehouse employees, overseeing the inbound/outbound call center, and managing the sales department.

- 4 -

17. Prior to joining HealthWarehouse, Mr. Yuhanick met with Mr. Lalit Dhadphale, HealthWarehouse's then President, Chief Executive Officer, and Chairman of the Board at HealthWarehouse's principal office in Ohio. HealthWarehouse, through Mr. Dhadphale, agreed among other things, to pay Mr. Yuhanick a base salary as well as a five percent (5%) commission for all gross revenue received by HealthWarehouse attributable to Customers originated through Mr. Yuhanick's efforts ("Sales Commission Agreement") which included revenue generated from: (1) individual customers who filled prescriptions or purchased Products and/or Services; (2) group customers (e.g. customers who were part of an insurance pool, customers who were employed by a common employer, or customers who were independent contractors working for the same business entity), and (3) entities who referred customers to HealthWarehouse to fill prescriptions and make Product and/or Service purchases.

18. Pursuant to the Sales Commission Agreement, HealthWarehouse also agreed that Mr. Yuhanick was entitled to continue receiving the 5% commission even if his employment with HealthWarehouse terminated.

19. Mr. Yuhanick fully performed his material obligations under the Sales Commission Agreement by among other things, originating and/or maintaining Customer relationships between HealthWarehouse which resulted in substantial customer revenue for HealthWarehouse.

20. On January 15, 2014, Mr. Dhadphale asked Mr. Yuhanick to prepare a written sales commission agreement to memorialize the terms of Mr. Yuhanick's existing Sales Commission Agreement with HealthWarehouse.

21. At Mr. Dhadphale's request, Mr. Yuhanick prepared, without the assistance of counsel, a written contract titled "Sales Commission Agreement" memorializing the terms of the existing Sales Commission Agreement between HealthWarehouse and Mr. Yuhanick.

22. The written Sales Commission Agreement reaffirmed that Mr. Yuhanick would be paid the 5% commission for all gross profit received by HealthWarehouse attributable to individual and group Customers originated through Mr. Yuhanick's efforts, and that Mr. Yuhanick would continue receiving such commissions even if his employment with HealthWarehouse was terminated.

23. On behalf of HealthWarehouse, Mr. Dhadphale executed the written Sales Commission Agreement. A true and correct copy of the signed written Sales Commission Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

24. Specifically, the Sales Commission Agreement expressly states, among other things:

> The Salesperson has sold and intends to continue to sell the products and services to individual and group customers for personal and commercial use . . .
>
> **FOR CONSIDERATION**, the receipt and sufficiency of which is hereby acknowledged, Company and Salesperson agree as follows:
>
> **1. Payment of Sales Commission**. Company shall pay to Salesperson a sales commission (a Regular Commission) equal to 5% of the gross profit for HealthWarehouse.com, Inc. sales generated by Scott Yuhanick. Company may aggregate all sales commissions owed to Salesperson for sales made and collected since the Salesperson's date of hire.
>
> **2.** Healthwarehouse.com, Inc. will continue to pay commissions to Scott Yuhanick as long as Healthwarehouse.com, Inc. is receiving sales and payments generated by Scott Yuhanick that have been established by this agreement. Payment of commissions established in this agreement will continue to Scott Yuhanick should he have the status of an employee or non-employee . . . .

- 6 -

25. During the first week of February, 2016, HealthWarehouse terminated Mr. Yuhanick's employment (Mr. Yuhanick's employment during January 2010 and February 2016 shall be referred to hereafter as "First Employment Term").

26. On or about October 9, 2016, Mr. Yuhanick was rehired by HealthWarehouse under the same compensation structure as existed during his previous employment with HealthWarehouse (meaning that HealthWarehouse paid Mr. Yuhanick a base salary and promised to pay commissions as memorialized in the Sales Commission Agreement) however, his responsibilities were reduced and limited to those of an ordinary sales representative ("Second Employment Term").

27. Working in the capacity as a sales representative during his Second Employment Term, Mr. Yuhanick's primary responsibilities were to originate and/or maintain relationships between HealthWarehouse and Customers in order to generate sales. Mr. Yuhanick's work was almost exclusively performed at the HealthWarehouse principal offices.

28. During his Second Employment Term, Mr. Yuhanick was misclassified as an exempt employee.

29. Since approximately July 2017, Defendant Mr. Peters has been the interim President and CEO of HealthWarehouse and has had operational control over HealthWarehouse, its compensation practices, and Mr. Yuhanick while Mr. Yuhanick was employed during his Second Employment Term.

30. During his Second Employment Term, Mr. Yuhanick was routinely required by Defendants to work in excess of forty hours per week.

31. During his Second Employment Term, Mr. Yuhanick was only paid for forty (40) hours each workweek regardless of the number of hours he actually worked.

32. During his Second Employment Term, Mr. Yuhanick's job duties did not fit under any exception to the overtime pay provisions of the Fair Labor Standards Act 29 U.S.C. § 201 *et seq*.

33. During his Second Employment Term, Mr. Yuhanick did not supervise any other employees.

34. During his Second Employment Term, Mr. Yuhanick did not have the authority to hire, fire, or reprimand other employees.

35. During his Second Employment Term, Mr. Yuhanick did not have authority to handle employee grievances or complaints.

36. During his Second Employment Term, Mr. Yuhanick did not have authority to interpret, implement, or enforce HealthWarehouse policies.

37. During his Second Employment Term, Mr. Yuhanick's job duties did not involve the exercise of discretion or independent judgment with respect to matters of significance.

38. During his Second Employment Term, Defendants did not pay Mr. Yuhanick the required overtime premium pay of one and one-half times his regular rate of pay for any hours worked in excess of forty per workweek.

39. During his Second Employment Term, Defendants required Mr. Yuhanick to work more than forty hours per week and yet Defendants failed to maintain accurate and sufficient records of the time Mr. Yuhanick spent working as required by law.

40. Defendants willfully failed to comply with the maximum hour provisions of the Fair Labor Standards Act 29 U.S.C. § 207, by failing to pay any overtime for any of the overtime hours worked by Mr. Yuhanick.

41. Mr. Yuhanick performed his obligations under the Sales Commission Agreement by originating and/or maintaining relationships between HealthWarehouse and Customers.

42. During Mr. Yuhanick's employment with HealthWarehouse, HealthWareHouse on occasion, did not paid his salary and/or commissions until weeks or months after they were due, and in some cases, Mr. Yuhanick has not yet received his earned commissions.

43. During the times HealthWarehouse did not pay Mr. Yuhanick his salary and/or commissions, Defendants promised Mr. Yuhanick that he would be paid at a later date.

44. During the course of his employment, commissions paid by HealthWarehouse to Mr. Yuhanick were attributable to, among other things: (1) individual customers who filled prescriptions or purchased Products and/or Services; (2) group customers (e.g. customers who were part of an insurance pool, customers who were employed by a common employer, or customers who were independent contractors working for the same business entity), and (3) entities who referred customers to HealthWarehouse to fill prescriptions and make Product and/or Service purchases.

45. As was confirmed by Mr. Dhadphale both verbally and in writing, during the course of his employment with HealthWarehouse, Mr. Yuhanick established and maintained a Customer relationship between HealthWarehouse and GoodRx[3] which resulted in significant revenue for HealthWarehouse. A true and correct copy of an email dated February 2, 2016 from Mr. Dhadphale confirming the GoodRx Customer relationship was established by Mr. Yuhanick is attached hereto as **Exhibit B**.

46. Mr. Yuhanick originated the Customer relationship with GoodRx while working at HealthWarehouse's principal offices in Loveland, Ohio.

47. GoodRx is a Customer within the meaning of the Sales Commission Agreement.

---

[3] http://www.goodrx.com

22127585.1

48. As a result of Mr. Yuhanick's work at the Ohio office developing this Customer relationship, HealthWarehouse generated revenue through GoodRx and triggered HealthWarehouse's contractual obligation to pay Mr. Yuhanick a 5% commission.

49. HealthWarehouse has refused to pay Mr. Yuhanick the commissions he earned as a result of the relationship he established and maintained between HealthWarehouse and GoodRx and the resulting revenue earned by HealthWarehouse.

50. As was confirmed by Mr. Dhadphale both verbally and in writing, during the course of his employment with HealthWarehouse Mr. Yuhanick established and maintained a Customer relationship between HealthWarehouse and Atlantis Health Plan ("Atlantis") and Catalyst Rx[4] which resulted in significant revenue for HealthWarehouse.[5] A true and correct copy of an email dated January 15, 2014 from Mr. Dhadphale confirming the Atlantis and Catalyst Rx Customer relationship was established by Mr. Yuhanick is attached hereto as **Exhibit C**; *see also* **Exhibit B**.

51. Mr. Yuhanick originated, established, and maintained the Customer relationship with Atlantis and Catalyst Rx while working at HealthWarehouse's Ohio Headquarters.

52. Atlantis and Catalyst Rx are both Customers within the meaning of the Sales Commission Agreement.

53. As a result of Mr. Yuhanick's work at the Ohio office establishing these Customer relationships, HealthWarehouse generated revenue through Atlantis and Catalyst Rx and triggered HealthWarehouse's obligation to pay Mr. Yuhanick a 5% commission.

---

[4] http://www.healthplanone.com/healthinsurancecarriers/atlantis/

[5] Atlantis is an insurance group whose participants received care from AMG Healthcare Inc. ("AMG"). Prescriptions written by an AMG physician for Atlantis plan participants were managed by Catalyst Rx, a pharmacy benefit manager, who in turn made payments to HealthWarehouse for all prescriptions processed by HealthWarehouse.

54. Also during the course of his employment with HealthWarehouse, Mr. Yuhanick established relationships between HealthWarehouse and 3M, Atomic Rx, HIMS Rx, HIMS OTC, and Pace Wellness pursuant to which, HealthWarehouse generated significant revenue.

55. Although HealthWarehouse has not yet paid Mr. Yuhanick his earned commissions, HealthWarehouse has acknowledged Mr. Yuhanick is owed commissions attributable to these relationships established by Mr. Yuhanick.

56. During October 2017, HealthWarehouse through the actions of Mr. Peters, presented Mr. Yuhanick with an "AT-WILL EMPLOYMENT AGREEMENT" ("2017 Employment Agreement") and told Mr. Yuhanick if he did not sign the 2017 Employment Agreement within two weeks, the company would terminate Mr. Yuhanick's employment. A true and correct copy of the 2017 Employment Agreement" is attached as **Exhibit D**.

57. The 2017 Employment Agreement acknowledged the existence and enforceability of the Sales Commission Agreement, but sought to alter the terms of Mr. Yuhanick's employment by, among other things: (a) requiring he consent to being bound by a new non-solicitation and non-competition provision; (b) converting his position from a salaried position to an hourly position; (c) eliminating his base salary; and (d) terminating the Sales Commission Agreement between HealthWarehouse as follows:

> **Termination of Sales Commission Agreement**. The parties hereby agree that the Sales Commission Agreement entered into between them on January 15, 2014 shall terminate as of the Effective Date of this Agreement and shall have no further force or effect…
>
> **Commission**. Employer hereby agrees to pay Employee a commission equal to five percent (5%) of the gross profit of all sales booked by Employee and collected by Employer during the course of Employee's employment at Employer ("Commission").
>
> **Draw**. Employer hereby agrees to pay Employee a draw against his Commission at the rate of twelve dollars ($12.00) per hour worked by Employee . . . ("Draw")

> ". . . To the extent Employee's Commission exceeds his Draw for any given calendar month, Employer shall pay Employee the balance of his Commission . . . To the extent Employee's Draw exceeds his Commission for any given calendar month, Employee shall reimburse Employer the difference between his Draw and his Commission . . . ."

2017 Employment Agreement at p.1, ¶ 1.c and p.2, ¶ 3.a. and ¶ 3.b, and p.3 ¶ 4.c.

58. Mr. Yuhanick did not sign the 2017 Employment Agreement and on or about November 2, 2017, HealthWarehouse terminated Mr. Yuhanick's employment.

59. HealthWarehouse has failed and refused to pay Mr. Yuhanick all commissions due and owing to Mr. Yuhanick, including among other things the commissions attributable to revenue earned through the Customer relationships with GoodRx.com, Atlantis, and Catalyst Rx.

## COUNT 1 – VIOLATION OF THE FAIR LABOR STANDARDS ACT

60. Mr. Yuhanick incorporates by reference its allegations contained in all preceding paragraphs as if fully rewritten herein.

61. While Mr. Yuhanick was employed during his Second Employment Term at HealthWarehouse, Mr. Yuhanick was entitled to receive overtime compensation at a rate of one and one-half times his regular rate of pay for all hours worked over forty (40) in a workweek.

62. Defendants violated 29 U.S.C. § 207(a) by failing to pay Mr. Yuhanick at a rate of one and one-half times his hourly rate for all hours worked in excess of forty (40) hours during a workweek throughout the entire time he worked for HealthWarehouse.

63. Defendants' violations of the Fair Labor Standards Act were repeated, willful, and intentional. Specifically, Defendants were well aware of the obligation to pay Mr. Yuhanick overtime pay pursuant to the Fair Labor Standards Act and/or recklessly disregarded the overtime pay obligations under the Fair Labor Standards Act.

- 12 -

64. Defendants' violation of Section 207 of the Fair Labor Standards Act was not in good faith.

65. Defendants further willfully failed to maintain records of all compensable work time subjecting it to further penalty under 29 U.S.C. § 216(b).

66. As a result of Defendants' violations of the Fair Labor Standards Act, Mr. Yuhanick suffered, and continues to suffer, damages and lost compensation for time worked over forty (40) hours per week.

67. In addition to the amount of unpaid overtime wages owing to Mr. Yuhanick, Mr. Yuhanick is entitled to recover an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b).

68. Mr. Yuhanick is entitled to an award of attorneys' fees and costs pursuant to damages pursuant to 29 U.S.C. § 216(b).

## COUNT 2 – BREACH OF CONTRACT

69. Mr. Yuhanick incorporates by reference its allegations contained in all preceding paragraphs as if fully rewritten herein.

70. The Sales Commission Agreement is a binding contract.

71. Mr. Yuhanick fully performed his material obligations under the Sales Commission Agreement by originating and/or maintaining relationships between HealthWarehouse and numerous Customers which resulted in revenue being generated for HealthWarehouse.

72. Pursuant to the Sales Commission Agreement, Mr. Yuhanick is entitled to receive a 5% commission on the revenue generated as a result of the relationships he established between HealthWarehouse and numerous Customers.

73. HealthWarehouse has breached the Sales Commission Agreement by failing and/or refusing to pay the amounts due and owing to Mr. Yuhanick.

74. Mr. Yuhanick has and will continue to be, damaged by HealthWarehouse's willful breach of the Sales Commission Agreement in an amount believed to be in excess of $500,000.00, to be determined at the trial of this matter.

### COUNT 3 – UNJUST ENRICHMENT (IN THE ALTERNATIVE)

75. Mr. Yuhanick incorporates by reference its allegations contained in all preceding paragraphs as if fully rewritten herein.

76. At HealthWarehouse's request Mr. Yuhanick conferred a benefit to HealthWarehouse by originating and/or maintaining Customer relationships between HealthWarehouse, including the relationships with GoodRx, Atlantis, and Catalyst Rx which have resulted in substantial revenue being generated for HealthWarehouse.

77. HealthWarehouse is aware that Mr. Yuhanick developed numerous Customer relationships on behalf of HealthWarehouse, including the relationships with GoodRx, Atlantis, and Catalyst Rx which have resulted in substantial revenue for HealthWarehouse.

78. HealthWarehouse has wrongfully retained the revenues it received as a result of the Customer relationships established by Mr. Yuhanick without compensating Mr. Yuhanick.

79. As a result of HealthWarehouse retaining the revenues it received without compensating Mr. Yuhanick, Mr. Yuhanick has been deprived of significant compensation he should have received as a result of developing and/or maintaining the Customer relationships that resulted in such substantial revenue to HealthWarehouse.

80. It would be unjust for HealthWarehouse to retain the unpaid commissions.

**WHEREFORE**, Plaintiff Mr. Yuhanick demands:

(a) a judgment in favor of Mr. Yuhanick and against Defendants for all amounts of overtime wages that Mr. Yuhanick should have received under the Fair Labor Standards Act but for Defendants' willful violation of his rights, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

(b) an award of all reasonable costs and attorneys' fees pursuant to 29 U.S.C. § 216(b);

(c) all amounts of wages and commission, including overtime, earned by Mr. Yuhanick;

(d) a judgment in favor of Mr. Yuhanick and against Defendants in an amount to be determined at trial, but in excess of $500,000.00 for their breach of contract and/or unjust enrichment;

(e) an award of attorneys' fees, interest, and costs; and,

(f) such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable in this matter.

Respectfully submitted,

/s/ Russell S. Sayre
Russell S. Sayre (0047125)
Sanna-Rae Taylor (0091302)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
Email: sayre@taftlaw.com
       srtaylor@taftlaw.com
*Attorneys for Plaintiff Scott Yuhanick*

22127585.1